UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| J.P., on her own and on behalf of her minor, child, M.A., | ) ) | |
| Plaintiffs, | ) ) ) | No. 23-CV-1136 |
| v. | ) ) | |
| THE UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

# Table of Contents

# Table of Authorities

## Cases

*Accardi v. United States*, 435 F.2d 1239 (3d Cir. 1970)...................................................... 24

*Aguilar v. ICE*, 510 F.3d 1 (1st Cir. 2007) ...................................................................... 32

*Air Shuttle Corp. v. United States*, 112 F.3d 532 (1st Cir. 1997) .................................... 27

*Antonelli v. Crow*, 2012 WL 4215024, *3 (E.D. Ky. Sept. 19, 2012) .......................... 23

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)…………………………………………...12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 9

*Baie v. Secretary of Def.*, 984 F.2d 1375 (9th Cir. 1986) ............................................. 20

*Bailor v. Salvation Army*, 51 F.3d 678 (7th Cir. 1995)................................................. 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 9, 29

*Berkovitz v. United States*, 486 U.S. 531 (1988) ......................................................... 17

*Bhuiyan v. United States*, 772 F.Appx 564 (9th Cir. 2019) .......................................... 27

*Blackstock v. Tatum*, 396 S.W.2d 463 .......................................................................... 34

*Blanco Ayala v. United States*, 982 F.3d 209 (4th Cir. 2020)………………….………….16,24

*Borquez v. United States*, 773 F.2d 1050 (9th Cir. 1985)............................................. 25

*Bossin v. Towber*, 894 S.W.2d 25 .................................................................................. 34

*Boyles v. Kerr*, 855 S.W.2d 593 (Tex. 1993)................................................................ 33

*Brownback v. King*, 141 S. Ct. 740 (2021) ............................................................. 11, 12

*Bultema v. United States*, 359 F.3d 379 (6th Cir. 2004)............................................... 23

*Bunikyte v. Chertoff*, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ............................. 4

*Butz v. Economou*, 438 U.S. 478 (1978)…………………………………………...…14, 15

*Browning-Ferris Industries, Inc. v. Lieck*, 881 S.W.2d 288, 294-295 (Tex. 1994)…………...38

*Caban v. United States*, 728 F.2d 68 (2d Cir. 1984) ....................................................... 30

*Calderon v. United States*, 123 F.3d 947 (7th Cir. 1997) ................................................ 12, 13, 15

*Capitol Leasing Co. v. FDIC*, 999 F.2d 188 (7th Cir. 1993) ......................................... 8

*Cassens v. St. Louis River Cruise Lines, Inc.*, 44 F.3d 508 (7th Cir. 1995) ........................... 13, 15

*Chen v. United States*, 854 F.2d 622 (2d Cir. 1988) ....................................................... 26

*Clark v. Suarez Martinez*, 543 U.S. 371 (2005) .................................................... 19

*Clark v. United States*, 326 F.3d 911 (7th Cir. 2003) .................................................... 11

*Cohen v. United States*, 151 F.3d 1338 (11th Cir. 1998) .......................................... 19

*Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434 (9th Cir. 1986) ......................... 18

*Cuevas v. Westerman*, No. 1:14-CV-133, 2016 WL 11529760, *6 (S.D. Tex. Nov. 10, 2016)…21

*Couch v. United States*, 694 F.3d 852 (7th Cir. 2012) .................................................... 11

*D.B. v. Preston*, 119 F.Supp.3d 472 (E.D. Va. 2015) ......................................................... 20

*Dalehite v. United States*, 346 U.S. 15 (1953) .......................................................... 24

*Davila v. United States*, 713 F.3d 248 (5th Cir. 2013) ................................................ 30

*Davis v. Carlson*, 837 F.2d 1318 (5th Cir. 1988) ...................................................... 33

*Davis v. Prosperity Bank*, 383 S.W.3d 795, 799 (Tex. App.—Houston [14th Dist.] 2012)……..36

*Dillard Dep't Stores v. Silva*, 106 S.W.3d 789 ........................................................... 32

*Dupree v. United States*, 247 F.2d 819 (3d Cir. 1957) ................................................. 24

*Elgamal v. Bernacke*, 714 F. Appx 741 (9th Cir. 2018) ............................................. 27

*Elgamal v. United States*, 2015 WL 13648070 (D. Ariz. July 8, 2015) ...................... 27

*FDIC v. Citizens Bank & Tr. Co. of Park Ridge, Ill.*, 592 F.2d 364 (7th Cir. 1979) ................... 25

*FDIC v. Meyer*, 510 U.S. 471 (1994) ......................................................................... 11

*Finley v. May*, No. 07-17-233-CV, 2017 WL 5763076, *3 (Tex. App. – Amarillo 2017)………37

4

*Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279 (3d Cir. 1995)..........................................20

*Flores v. Barr*, 2020 U.S. Dist. LEXIS 97047, *23 (C.D. Cal. Apr. 24, 2020)......................28

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) .................................................................4

*Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020) .................................................................4

*Franklin Sav. Corp. v. United States*, 180 F.3d 1124 (10th Cir. 1999) ..........................22

*Gandarillas-Zambrana v. BIA*, 44 F.3d 1251 (4th Cir. 1995) ......................................18

*Garza v. United States*, 881 F.Supp. 1103 (S.D. Tex. 1995)..................................30, 33

*General Dynamics Corp. v. United States*, 139 F.3d 1280 (9th Cir. 1998)..................17

*Giotis v. Apollo of Ozarks, Inc.*, 800 F.2d 660 (7th Cir. 1986)......................................8

*Gould Elecs. Inc. v. United States*, No. 99-1130, 2002 WL 27834, *8 (E.D. Pa. Jan. 10, 2002)..22

*GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605 (Tex. 1999) ..................................................31

*Hardy v. Mitchell*, 195 S.W.3d 862, 864-65 (Tex. App. – Dallas ...2006)..........................37

*Harrison v. Fed. Bureau of Prisons*, 464 F.Supp.2d 552 (E.D. Va. 2006)....................23

*Hernandez v. United States*, 2018 WL 4103015 (S.D. Tex. July 2, 2018)....................29

*Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223 (5th Cir. 1988) .................................29

*Hunt v. Baldwin*, 68 S.W.3d 117 (Tex. App.—Houston [14th Dist.] 2001, no pet.)....................34

*Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155 (1st Cir. 1987)........................25

*In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982 (9th Cir. 1987)..............28

*In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987)..........................................................17

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ................................8

*Kristensen v. United States*, 993 F.3d 363 (5th Cir. 2021) ..........................................33

*Lane v. United States*, 918 F. Supp. 864, 870 (E.D. Pa.1996)......................................21

*Lehman v. Nakshian*, 453 U.S. 156 (1981) ...................................................................11

*Lemanski v. AG of the United States,* 353 Fed. Appx. 775 (3d Cir. 2009)………………..………7

*Linder v. United* States, 937 F.3d 1087 (7th Cir. 2019)..........................................................14, 15

*Lineberry v. United States,* 2009 WL 763052 (N.D. Tex. Mar. 23, 2009) ................................. 23

*Lipsey v. United States*, 879 F.3d 249 (7th Cir. 2018)................................................. 19

*Liranzo v. United States*, 690 F.3d 78 (2d Cir. 2012) .................................................. 26

*Maas v. United States*, 94 F.3d 291 (7th Cir. 1996) .................................................. 13

*Mazur v. United States*, 957 F.Supp. 1041 (N.D. Ill. 1997) ........................................... 27

*McElroy v. United States*, 861 F.Supp. 585 (W.D. Tex. 1994) ....................................... 29

*Mejia-Mejia v. ICE*, 2019 WL 4707150 (D.D.C. Sept. 26, 2019)............................... 17

*Mirmehdi v. United States*, 662 F.3d 1073 (9th Cir. 2011) ........................................... 19

*Parrott v. United States*, 536 F.3d 629 (7th Cir. 2008) ............................................. 12

*Payne-Barahona v. Gonzalez*, 474 F.3d 1 (1st Cir. 2007) ............................................ 32

*Peña Arita v. United States,* 470 F.Supp.3d 663, 691-92 (W.D. Tex. 2020)……..…………19, 23

*Porter v. United States*, 473 F.2d 1329 (5th Cir. 1973)............................................... 25

*Powell v. United States*, 233 F.2d 851 (10th Cir. 1956) .............................................. 24

*Rathod v. Barr*, 2020 WL 1492790 (W.D. La. Mar. 5, 2020) ...................................... 33

*Reagan v. Vaughn*, 804 S.W.2d 463, 466-467 (Tex. 1990)…………………..…………38

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) ......................................... 18

*Reynolds v. United States*, 549 F.3d 1108 (7th Cir. 2008)………………………………… 13

*Ryan v. ICE*, 974 F.3d 9 (1st Cir. 2020) .................................................. 27

*S.E.B.M. v. United States*, 2023 WL 2383784 (D.N.M. Mar. 6, 2023) ..................... 17, 23, 25, 31

*Saldana v. United States*, 248 F.3d 1139 (5th Cir. 2001) .............................................. 30

*Santana-Rosa v. United States*, 335 F.3d 39 (1st Cir. 2003) ........................................... 19

*Sasso v. Milhollan*, 735 F.Supp. 1045 (S.D. Fla. 1990).................................................. 18

*Sickman v. United States*, 184 F.2d 616 (7th Cir. 1950)............................................ 25

*Silcott v. Oglesby*, 721 S.W.2d 290, 293 (Tex. 1986)…………………………………………………37

*Smith v. United States*, 375 F.2d 243 (5th Cir. 1967) .................................................. 17

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)......................................... 8

*Sw. Env't Ctr. v. Sessions*, 355 F.Supp.3d 1121 (D.N.M. 2018) ................................. 17

*Sydnes v. United States*, 523 F.3d 1179 (10th Cir. 2008) ............................................ 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)................................. 9

*Tovar v. United States*, 2000 WL 425170, *6-7 (N.D. Tex. Apr. 18, 2000) ............................... 30

*Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239 (5th Cir. 1993) ......................................... 33

*United States v. Armstrong*, 517 U.S. 456 (1996) .................................................. 16, 17

*United States v. Dominguez-Portillo*, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) ...................... 4

*United States v. Gaubert*, 499 U.S. 315 (1991)…………………………………………… 13, 14, 15

*United States v. Nixon*, 418 U.S. 683 (1974) ................................................................. 17

*United States v. Olson*, 546 U.S. 43 (2005).................................................................. 26

*United States v. Orleans*, 425 U.S. 807 (1976)............................................................ 27

*United States v. Varig Airlines*, 467 U.S. 797 (1984)................................................. 13

*United States v. Vasquez-Hernandez*, 924 F.3d 164 (5th Cir. 2019) ............................................ 4

*United States v. Wong,* 575 U.S. 402 (2015) ................................................................. 12

*Upjohn Co. v. Freeman*, 885 S.W.2d 538, 547-548 (Tex. App. – Dallas 1994, writ denied)…...38

*Van Dinh v. Reno*, 197 F.3d 427 (10th Cir. 1999) ....................................................... 18

*Villafranca v. United States*, 587 F.3d 257 (5th Cir. 2009) ........................................... 29

*Walding v. United States*, 955 F.Supp.2d 759 (W.D. Tex. 2013).................................... 28

*Weissich v. United States*, 4 F.3d 810, 814 (9th Cir. 1993)……………………...……………22

*Westbay Steel, Inc. v. United States*, 970 F.2d 648 (9th Cir. 1992)...........................................26

*Whalen v. United States*, 29 F. Supp. 2d 1093, 1097 (D.S.D.1998)………………………...…22

*Whittlesey v. Miller*, 572 S.W.2d 665, 666-667 (Tex. 1978)………………………………….38

*Wornick Co. v. Casas*, 856 S.W.2d 732 (Tex. 1993) ...................................................................31

## Statutes

6 U.S.C. § 279 ............................................................................................................... 3, 20

8 U.S.C. § 1225 ............................................................................................................... 31

8 U.S.C. § 1231(g)(1) ..................................................................................................... 18

8 U.S.C. § 1232 ...................................................................................................... passim

8 U.S.C. § 1324………………………………………………………...……...6, 7, 17, 31

8 U.S.C. § 1325(a) ........................................................................................................  2, 6

28 U.S.C. § 1346(b) ........................................................................................ 11, 12, 16, 26, 29

28 U.S.C. § 2401(b)………………………………………………………………...... 9, 12

28 U.S.C. § 2671 ............................................................................................................. 28

28 U.S.C. § 2680 ............................................................................................ 12, 14, 15, 24

## Rules

Fed. R. Civ. P. 12(b)(1)................................................................................................... 8

**[Page Intentionally Left Blank]**

**Introduction**

Plaintiffs, a mother and son from Honduras, were separated from each other upon entering the United States in January 2018. Plaintiffs allege that they were separated due to the implementation of the prior administration's "Zero Tolerance Policy" and DHS's corresponding policy to refer for prosecution adults suspected of illegally entering at the U.S.-Mexico border, regardless of family unit status (the "DHS Referral Policy"). After taking office, President Biden denounced the prior practice of separating children from their families at the United States-Mexico border, condemned the human tragedy that occurred, and established a task force to continue efforts to reunify families who had been separated. Plaintiffs now seek monetary damages under the Federal Tort Claims Act (FTCA) for alleged injuries resulting from the separation.

The U.S. government does not defend the policy choices that led to family separations under the prior administration's policies. This case, however, does not relate to those policy choices, as Plaintiffs' entry pre-dates the implementation of the Zero Tolerance Policy in April 2018 or the DHS Referral Policy in May 2018. Moreover, Plaintiffs were not separated due to an unlawful entry into the United States, but because J.P. was referred for prosecution for noncitizen smuggling and held in criminal detention for over a month, and Customs and Border Protection (CBP) was required by statute to transfer her son to the custody of the Department of Health and Human Services' (DHS) Office of Refugee Resettlement (ORR). In any event, Congress has not waived the United States' sovereign immunity for the types of claims that Plaintiffs assert in this action. Because Plaintiffs' tort claims accrued more than two years before they submitted their administrative claim to the Department of Homeland Security, the claims are barred as untimely. Moreover, several of the exceptions to the FTCA's waiver of sovereign

immunity apply, meaning the Court lacks subject matter jurisdiction over Plaintiffs' claims. And even if there were a sovereign immunity waiver, Plaintiffs have failed to state a claim upon which relief can be granted for any of the seven torts they allege.

Either way, the claims should be dismissed.

**Background**

**I.      Statutory Framework for Noncitizens Entering the United States**

When a noncitizen enters the United States between official ports of entry, he may be prosecuted for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C. § 1325(a). Violation of § 1325(a) is a misdemeanor punishable by a fine and imprisonment of up to six months for a first infraction. *Id.*

A person arriving or present in the United States who is deemed inadmissible is also subject to removal from the United States and, as appropriate, detention pending the removal. 8 U.S.C. §§ 1225(b), 1226, 1357. These provisions apply to both adults and children. The government has statutory authority to "arrange for appropriate places of detention for "noncitizens" detained pending removal or a decision on removal." *Id.* § 1231(g)(1). In some cases, the Department of Homeland Security (DHS) may exercise its discretion to release a noncitizen from custody pending a decision on removal. *E.g.*, *id.* §§ 1182(d)(5), 1226(a)(2). Those determinations are made on a "case-by-case basis" pursuant to federal statutory and regulatory authorities. *Id.* § 1882(d)(5); 8 C.F.R. §§ 235(b)(2)(iii), (b)(4)(ii).

**II.      Statutory Framework for Immigration Custody of Unaccompanied Minors**

Federal immigration law authorizes the government to provide for the custody and care of minor children who are present in the United States without lawful immigration status.

Specifically, ORR is charged with "the care and placement of unaccompanied "alien" children who are in federal custody by reason of their immigration status." 6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied 'alien' child," or UAC, is defined as a child who: (1) "has no lawful immigration status in the United States," (2) "has not attained 18 years of age," and (3) for whom "there is no parent or legal guardian in the United States" or "no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), 8 U.S.C. § 1232(b)(3), any agency "shall transfer" a child in its custody to ORR's custody "not later than 72 hours after determining that such child is an unaccompanied "noncitizen" child," absent exceptional circumstances. 8 U.S.C. § 1232(b)(3). ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child." *Id.* § 1232(c)(2)(A). But ORR "shall not release such children upon their own recognizance." 6 U.S.C. § 279(b)(2)(B). Rather, once ORR takes custody, it must follow detailed statutory and regulatory provisions before releasing the child to an approved sponsor. 8 U.S.C. § 1232(c)(3). Congress forbids transferring custody of a UAC "unless the Secretary of Health and Human Services makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being" and that this determination "shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *Id.* § 1232(c)(3)(A). In some instances, a home study is required. *Id.* § 1232(c)(3)(B).

### III.    Flores Agreement Requirements

In 1996, the government entered into a settlement agreement referred to as the "Flores Agreement." *See, e.g.*, *Flores v. Sessions*, No. 85 C 4544 (C.D. Cal. Feb. 2, 2015) (Dkt. 101). The Flores Agreement "sets out nationwide policy for the detention, release, and treatment of minors" in immigration authorities' custody. *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing Flores Agreement ¶ 9). According to the Ninth Circuit, the Flores Agreement "unambiguously" applies to both unaccompanied minors and minors who are encountered with their parents or guardians. *Id.* at 901. Under the agreement, the government must expeditiously transfer any minor who cannot be released from custody to a non-secure, licensed facility. *Id.* at 902-03 (quoting Flores Agreement ¶ 12). The government must also "make and record the prompt and continuous efforts on its part" toward releasing the minor. *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) (quoting Flores Agreement ¶ 14).

The Flores Agreement applies only to minors. *Flores*, 828 F.3d at 901. It does not address "the housing of family units and the scope of parental rights for adults apprehended with their children," and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Id.* at 906; *see also United States v. Dominguez-Portillo*, 2018 WL 315759, *9 (W.D. Tex. Jan. 5, 2018) (*Flores* "does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities"), *aff'd sub nom. United States v. Vasquez-Hernandez*, 924 F.3d 164 (5th Cir. 2019). Nor does the Flores Agreement provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759 at *14-15; *Bunikyte v. Chertoff*, 2007 WL 1074070, *16 (W.D. Tex. Apr. 9, 2007). Though the Flores Agreement gives preference to releasing a minor to his parent, the preference "does not mean

4

that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

## IV.  Executive Branch Directives Regarding Immigration Enforcement

In January 2017, then-President Trump issued Executive Order No. 13767 ("EO 13767") stating that "[i]t is the policy of the executive branch to . . . detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations." Exec. Order No. 13,767 § 2(b), 82 Fed. Reg. 8793 (Jan. 3, 2017). EO 13767 directed DHS to "ensure the detention of [noncitizens] apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law," and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute . . . and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole." *Id*. §§ 6, 11(d).

On August 4, 2017, the El Paso Sector of the U.S. Border Patrol, which oversees stations in parts of New Mexico and Texas, issued email guidance explaining that the U.S. Attorney's Office for the District of New Mexico would accept certain adults for prosecution of violations of 8 U.S.C. § 1325, including adults who had been traveling with minor children who were at least 10 years old. Because the guidance in the El Paso Sector was a Border Patrol initiative, it did not apply the CBP's Office of Field Operations (OFO), which is a separate component of CBP from Border Patrol. On November 18, 2017, Border Patrol headquarters instructed the El Paso Sector to discontinue the El Paso Initiative. See *Department of Justice, Office of the Inspector General, Review of the Department of Justice's Planning and Implementation of its Zero Tolerance Policy and Its Coordination with the Departments of Homeland Security and*

*Health and Human Services. January 2021 (Revised)*, pp. 13- 18, available at https://oig.justice.gov/reports/review-department-justices-planning-and-implementation-its-zero-tolerance-policy-and-its (last visited August 1, 2023), hereinafter referred to as "OIG Report 21-028."

On April 6, 2018, Attorney General Jefferson Sessions issued a memorandum that directed "each United States Attorney's Office along the Southwest Border—to the extent practicable, and in consultation with DHS—to adopt immediately a zero tolerance policy for all offenses referred for prosecution under" 8 U.S.C. § 1325(a), which prohibits unlawful entry into the United States ("the Zero-Tolerance Policy"). OIG Report 21-028, p. 20. On May 4, 2018, Homeland Security Secretary Kirstjen Nielsen approved a policy of referring for prosecution, to the extent practicable, all adults who unlawfully crossed the Southwest border of the United States, including those initially arriving with minors ("the DHS Referral Policy"). OIG Report 21-028, p. 1-2.

## V.   Plaintiffs' Detention and Placement

According to the Complaint, Plaintiffs J.P. and her ten-year-old son (M.A.)—traveled from Honduras to the United States, arriving at the pedestrian bridge at the Paso del Norte port of entry, which crosses the Rio Grande River between Ciudad Juarez, Mexico and El Paso, Texas, United States on January 13, 2018. Compl. ¶ 44. Plaintiff, J.P., approached a CPB Field Operations officer at the checkpoint and informed him that she and her son did not have documents to enter the United States. *Id.* at ¶ 46. J.P. alleges that she told the officer that she and her son wanted to apply for asylum. *Id.* J.P. alleges in her complaint that she presented her Honduran identity card and M.A.'s birth certificate, showing that she was his mother. *Id.* J.P. and M.A. were referred to secondary inspection. *Id.*

CBP Officers arrested J.P. and referred her for prosecution. An indictment was returned charging J.P. for of "noncitizen" smuggling in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), which

makes it a felony to transport a noncitizen over the border without prior authorization for private financial gain. *Id.* at 48; See Indictment and Criminal Complaint, filed under seal in this case pursuant to "Defendant's Motion to File Under Seal."[1] ECF #s 9 and 10. The indictment alleged that J.P. presented at the border with four alleged minors in addition to her son, whom she claimed were her cousins. See Indictment and Criminal Complaint.[2] The indictment alleged that one of the minors appeared older and admitted to a Border Patrol Officer that he was 21 years old, had given a false name, and that J.P. was paid $1,500.00 to smuggle him into the United States. *Id.*

J.P. and M.A. were separated on the morning of January 14, 2018. Compl. at ¶ 54. J.P. was sent to the El Paso County Detention Facility. *Id.* at ¶ 60. As J.P. had been transferred to criminal custody, she was no longer able to provide care and physical custody of M.A., rendering him a UAC. Accordingly, M.A. was transferred to ORR custody as a UAC and sent to an approved HHS Contractor for housing UACs in Arizona. *Id.* at ¶ 56. On March 11, 2018, M.A. was released to a family member that lived in the United States. *Id* at ¶ 59.

On February 23, 2018, i.e., more than a month after her referral for prosecution, the indictment against J.P. was dismissed, and she was transferred to civil immigration custody. *Id.* at ¶¶ 65-66. J.P. consented to removal on May 9, 2018, and was removed back to Honduras on June 6, 2018. *Id.* at ¶¶ 76, 79. She subsequently reentered the United States by illegally crossing the border between ports of entry on foot on February 7, 2019, and was apprehended. *Id.* at ¶ 82.

---

[1] "Noncitizen" smuggling is a shorthand description for the offenses listed in 8 U.S.C. § 1324. *See Lemanski v. Att'y Gen. of United States*,353 F. App'x 774 (3d Cir. 2009); Compl. ¶ 48.
[2] A Court may take judicial notice of public records such as Court documents referenced herein. *Tobey v. Chibucos*, 890 F.3d 634, 647-48 (7th Cir, 2018) (collecting cases). Defendant does not assert that the Court may take notice of the truth of the facts asserted in the indictment, but it may take notice that these assertions were made in the indictment.

J.P. was released into the United States on February 11, 2019, and was reunited with M.A. on February 16, 2019. *Id.* at ¶ 84, 86.

## VI.    Procedural Background

Plaintiffs filed this lawsuit on April 3, 2023. Compl. ¶ 1. They allege that the government "wanted to inflict emotional distress on parents and children in order to deter them from legally seeking asylum in this country." *Id.* J.P. alleges that she was accused of "noncitizen" smuggling as a pretext to forcibly separate her from her son. *Id*. ¶ 13. Plaintiffs bring seven counts under the FTCA: (1) intentional infliction of emotional distress; (2) negligence; (3) abuse of process; (4) malicious prosecution; (5) false imprisonment; (6) child abduction; and (7) loss of consortium. Compl. ¶¶ 139 – 180.

Plaintiffs claim that they suffered emotional and physical injuries as the direct result of the United States' Zero Tolerance Policy and the DHS Referral Policy. As noted above, neither policy was in effect at the time that J.P. and M.A. presented themselves at the Paso del Norte border crossing.

**Legal Standards**

Rule 12(b)(1) allows a party to move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The Court must consider the threshold issue of jurisdiction before addressing a case's merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). A plaintiff bears the burden of establishing jurisdiction because, by filing a complaint in federal court, they seek to invoke it. *Giotis v. Apollo of Ozarks, Inc.*, 800 F.2d 660, 672 (7th Cir. 1986); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court may look beyond the complaint's allegations to determine whether subject matter jurisdiction exists. *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993).

Rule 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim. To survive dismissal, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level" and must be sufficient to "state a claim to relief that is plausible on its face." *Id*. at 555, 570. A claim has facial plausibility "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court ruling on a motion to dismiss may rely on documents incorporated into the complaint by reference and on matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**Argument**

**I.    Plaintiffs' Claims are Barred Pursuant to the FTCA Statute of Limitations**

Plaintiffs' claims must be dismissed because they are time barred. The FTCA provides that "a tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b).

There are two ways for a claim to accrue under the FTCA—one subjective and the other objective. A FTCA claim accrues when either: "(1) the individual becomes subjectively aware of the government's involvement in the injury, or (2) the individual acquires information that would prompt a reasonable person to inquire further into a potential government-related cause of the injury, whichever happens first." *P.W. v. United States*, 990 F.3d 515, 519-520 (7th Cir. 2021) citing *E.Y. ex. rel. Wallace v. United States*, 758 F.3d 861, 866 (7th Cir. 2014). In other words,

9

"[a] plaintiff's claim accrues the first time the plaintiff knew, or a reasonably diligent person in the plaintiff's position, reacting to any suspicious circumstances of which he or she might have been aware, would have discovered that an act or omission attributable to the government could have caused his or her injury." *Id.* citing *Arroyo v. United States*, 656 F.3d 663, 667 (7th Cir. 2011).

Plaintiffs' complaint alleges a variety of claims, all of which accrued between January 2018 when Plaintiffs attempted to enter the United States and June 2018 when Plaintiff J.P. was removed to Mexico. Compl. ¶¶ 62-79. By their own admission, Plaintiffs submitted their claim to the Department of Homeland Security on July 24, 2020, more than two years after both Plaintiffs suffered the alleged harms. Compl. ¶ 6.

Plaintiffs' claims principally stem from the decisions to refer J.P. for prosecution and to separate J.P. and M.A., which occurred on January 14, 2018. Plaintiffs thus were on notice of their potential claims no later than January 14, 2018. At a minimum Plaintiffs were on notice of their claims when M.A. was released from ORR custody to a family member in March 2018 or when J.P. was removed from the United States on June 6, 2018, Compl. ¶¶ 59, 79, both of which occurred more than two years prior to the submission of their administrative claims. Moreover, Plaintiff, J.P., was on notice of the back injury she allegedly suffered while in immigration detention and the allegedly inadequate medical care she received no later than the date of her removal from the United States. Thus, Plaintiffs have failed to meet the two-year claim requirement as required by the FTCA.

## II.      Plaintiffs' Claims Should be Dismissed on Sovereign Immunity Grounds

The current administration has disavowed the previous administration's Zero Tolerance Policy and the DHS Referral Policy. Plaintiffs in this case, however, were not subject to those

policies, as their detention and separation were pursuant to existing laws, policies, and practices authorizing the detention of individuals suspected of committing a criminal offense and arrangement of care and housing for UACs. Congress has not waived the United States' sovereign immunity with respect to claims arising from such a scenario. Plaintiffs' Complaint challenges discretionary decisions that are susceptible to policy analysis, including policies surrounding law enforcement, immigration, and national security, and it also challenges actions taken by federal employees while reasonably executing federal immigration laws. Statutory exceptions to the FTCA's waiver of the United States' sovereign immunity preclude these types of claims. Thus, this case should be dismissed in the first instance on sovereign immunity grounds.

### A.    No Waiver of Sovereign Immunity

The United States, as a sovereign entity, "is immune from suit except insofar as it has specifically and expressly consented to be sued." *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981) (quotation omitted). Absent a specific, express waiver, sovereign immunity bars a suit against the government. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Brownback v. King*, 141 S. Ct. 740, 749 (2021) (holding that "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional"). The Plaintiff bears the burden of showing Congress's unequivocal waiver of sovereign immunity. *Clark v. United States*, 326 F.3d 911, 912 (7th Cir. 2003) ("To maintain an action against the United States in federal court, a Plaintiff must identify a statute that confers subject matter jurisdiction on the district court and a federal law that waives the sovereign immunity of the United States to the cause of action.").

The FTCA contains a "limited waiver of the United States' sovereign immunity." *Couch v. United States*, 694 F.3d 852, 856 (7th Cir. 2012). The statute allows a person to sue the United

11

States when a federal employee acting within the scope of their employment causes "injury, loss of property, or personal injury or death." 28 U.S.C. § 1346(b)(1). However, the FTCA's waiver of sovereign immunity is subject to several exceptions. 28 U.S.C. § 2680. When an exception applies, the United States retains sovereign immunity, and the claim must be dismissed. *Calderon v. United States*, 123 F.3d 947, 948 (7th Cir. 1997) (affirming dismissal of action pursuant to Rule 12(b)(1)).[3] As discussed below, several exceptions to the FTCA's waiver of sovereign immunity apply here, any of which precludes Plaintiffs' claims (whether the exceptions are considered jurisdictional or as mandatory claims-processing requirements).

### B.    Discretionary Function Exception

#### 1.    Explanation and History

One of the FTCA's exceptions is the "discretionary function exception," or the DFE. It bars any claim that is "based upon the exercise or performance or the failure to exercise or

---

[3] The Seventh Circuit (alone among the circuits) has since held that FTCA defenses are not jurisdictional, but mandatory claims-processing rules, *e.g., Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008) (noting that the FTCA statutory exceptions "limit the breadth of the Government's waiver of sovereign immunity, but they do not accomplish this task by withdrawing subject-matter jurisdiction from the federal courts"). But more recent Supreme Court decisions strongly suggest the opposite. *Brownback v. King*, 141 S. Ct. 740, 749 (2021) (holding that "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional"); *United States v. Kwai Fun Wong,* 575 U.S. 402, 411-12 (2015). The jurisdiction-granting statute for the FTCA is 28 U.S.C. § 1346(b), which begins "[s]ubject to the provisions of chapter 171 of this title [§§ 2671-2680], the district courts . . . shall have exclusive jurisdiction" of tort claims against the United States. In *Wong*, the Supreme Court held that the statute of limitations found in § 2680 are on the jurisdictional side of the "structural divide" created by 28 U.S.C. § 1346(b), referring to those sections that are located in chapter 171 of Title 28 contrasted with those sections that are located in a different chapter of Title 28. The exceptions to the FTCA found in § 2680 are on the jurisdictional side of the "structural divide" created by the opening clause of § 1346(b). A rule is jurisdictional "[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional," *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006), which is exactly what Congress did in the opening and qualifying clause of § 1346(b). But this court need not resolve the tension between jurisdictional limitations and mandatory claim-processing rules; either way, the claims in this case are subject to dismissal on sovereign immunity grounds.

perform a discretionary function or duty on the part of a federal agency or an employee of the Government, *whether or not the discretion involved be abused*." 28 U.S.C. § 2680(a) (emphasis added). The Supreme Court has provided a two-part test for determining whether the DFE applies. *United States v. Gaubert*, 499 U.S. 315, 328-32 (1991).

In the first part of the two-part DFE test, the court asks whether the challenged conduct was "discretionary in nature," in other words whether the conduct involved "an element of judgment or choice." *Gaubert*, 499 U.S. at 322 (quotation omitted). The first prong is met unless "a federal statute, regulation or policy *specifically proscribes* a course of action for an employee to follow." *Id.* (emphasis added); *see also Maas v. United States*, 94 F.3d 291, 297 (7th Cir. 1996) (the statute, regulation, or policy does not call for the exercise of judgment only if it provides a "precise and optionless directive"). Even if a regulation contains a mandate to do something, if that mandate involves judgment or choice, the discretion element is satisfied. *Cassens v. St. Louis River Cruise Lines, Inc.*, 44 F.3d 508, 513 (7th Cir. 1995) ("In this inquiry, the existence of regulatory requirements, however detailed, is of no import if the means of determining compliance . . . involves the type of judgment protected by the discretionary function exception"); *Calderon*, 123 F.3d at 950 (whether a particular response under the regulatory scheme is mandatory turns on discretionary judgments as to whether certain conditions are met).

In the second part of the two-part DFE test, if the conduct does involve choice or discretion, the court determines whether the employee's judgment was "of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23. The DFE is designed to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through tort action." *United States v. Varig*

13

*Airlines*, 467 U.S. 797, 814 (1984) (quotation omitted); *see also Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) ("All that matters is the nature of the actions taken and . . . whether they are susceptible to policy analysis."); *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008) ("[W]e operate at a higher level of generality . . . , asking categorically (rather than case specifically) whether the kind of conduct at issue can be based on policy concerns.").

The government need not prove that anyone in fact considered these factors or made a conscious decision on the basis of them. Indeed, under the second prong, the government actor's subjective motive is immaterial: "The focus of the inquiry is *not* on the agent's subjective intent in exercising the discretion conferred by statute or regulation." *Gaubert*, 499 U.S. at 325; *Reynolds*, 549 F.3d at 1112 ("The government actor's interest is of no consequence to our analysis, [n]or must the actor belong to the policymaking or planning ranks of government in order for the exception to apply.") (quotations and citations omitted). Where the relevant policies provide for discretion, it must be presumed that the government's actions are grounded in policy when exercising that discretion. *Gaubert*, 499 U.S. at 324.

And the FTCA's text confirms that the exception applies "whether or not the discretion involved [was] abused" by an official. 28 U.S.C. § 2680(a); *see also Reynolds*, 549 F.3d at 1112 (DFE applies where Plaintiff alleges "malicious and bad faith conduct" because "subjective intent is irrelevant to our analysis"); *Linder v. United* States, 937 F.3d 1087, 1090 (7th Cir. 2019). The exception "tells us that there is no liability even if a regulation or directive is invalid, and even if the discretion conferred under it has been abused." *Linder* at 1090. Put simply, "when some legal doctrine creates discretion, the fact that the discretion was misused, and a tort ensued does not lead to liability." *Linder*, 937 F.3d. at 1091; *see also Butz v. Economou*, 438

U.S. 478, 505 (1978) (observing that the FTCA "prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused").

If the DFE applies, then the United States retains its sovereign immunity, the court lacks jurisdiction, and the claim must be dismissed. *Calderon*, 123 F.3d at 948. This result applies even if the government may have been *negligent* in performing the discretionary acts, because negligence is irrelevant to the discretionary function inquiry. 28 U.S.C. § 2680(a) (DFE applies "whether or not the discretion involved be abused"); *Cassens*, 44 F.3d at 515 ("If the discretionary function exception could be pierced by showing negligent acts in implementing the discretionary function, the exception would be no shield at all."); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (FTCA's limited waiver of sovereign immunity was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion").

The DFE is not made inapplicable by simply by an allegation of a violation of a constitutional right. In *Gaubert*, the Supreme Court held that, where "a federal statute, policy, or regulation specifically prescribes a course of action for an employee to follow," there is no further discretion to exercise. 499 U.S. at 322. At a minimum, overcoming the DFE requires a showing that the government official's discretion was constrained by a specific, clearly established directive, along with proof that the specific directive was violated. *See Butz v. Economou*, 438 U.S. 478 (1978) (recognizing that DFE would apply even if alleged conduct might later be held unconstitutional). Moreover, the Seventh Circuit has rejected the notion that there is a constitutional carveout from the DFE. *See Linder* at 1091. There, the Seventh Circuit affirmed the dismissal of claims for malicious prosecution and intentional infliction of emotional

distress that included allegations of constitutional violations on the ground that the FTCA "does not apply to constitutional violations." *Id.* As the court explained, the FTCA "applies to torts as defined by state law—that is to say, 'circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Id.* (quoting 28 U.S.C. § 1346(b)(1)) (emphasis in original). The FTCA is "a means to seek damages for common-law torts, without regard to constitutional theories." *Id.*

### 2.     Application to Plaintiffs' Separation

Here, Plaintiffs' claims are based on the decisions to arrest and refer J.P. for prosecution for "noncitizen" smuggling, resulting in the separation of J.P. and M.A. The claims are barred by the DFE because the challenged decisions involved an element of judgment or choice and were susceptible to policy analysis.

The decisions to refer J.P. for prosecution and detain her, which resulted in J.P. and M.A.'s separation, are quintessentially discretionary. The DFE plainly applies to decisions relating to the arrest of noncitizens without entry documents at the border and referral for criminal prosecution. Indeed, discretion "lies at the heart of the DHS law enforcement function." *Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020). In exercising this function, DHS agents must "make all the classic judgment calls the discretionary function was meant to exempt from tort liability." *Id*. Immigration policy involves "vital national interests in law enforcement at the borders," and DHS officers' "decisions in investigating and responding to potential violations of immigration law are infused with public policy considerations." *Id*. at 217. Accordingly, the decision to apprehend J.P. to refer her for criminal prosecution, which resulted in Plaintiffs' separation, is a discretionary decision that cannot be challenged.

### a.     Prosecution and Detention of J.P.

16

Regarding prosecutions, the Supreme Court has recognized that the Attorney General and United States Attorneys "retain broad discretion to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation omitted). Indeed, the Supreme Court "has long recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.'" *In re Sealed Case*, 829 F.2d 50, 63 (D.C. Cir. 1987) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)); *see also Smith v. United States*, 375 F.2d 243, 247 (5th Cir. 1967) ("decisions concerning enforcement" are matter of "discretion"); *General Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998) ("The decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability" under the FTCA).

As other courts have recognized, the decision to arrest and refer to DOJ individuals suspected of violations of immigration law "amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General." *Mejia-Mejia v. ICE*, 2019 WL 4707150, *5 (D.D.C. Sept. 26, 2019); *Sw. Env't Ctr. v. Sessions*, 355 F. Supp. 3d 1121, 1126 (D.N.M. 2018) ("Whether a person is prosecuted for [8 U.S.C. § 1324] after a referral by DHS is a decision made by DOJ, and is subject to DOJ's prosecutorial discretion."); *S.E.B.M. v. United States*, 2023 WL 2383784, 2023 U.S. Dist. LEXIS 37232, *37 (D.N.M. Mar. 6, 2023) ("The decision to prosecute is perhaps the prototypical discretionary function the exception is intended to protect from liability."), and *US v. Texas*, 143 S. Ct. 1964 (2023). The DFE bars the court from "second-guessing" or inquiring into government actors' intent in exercising that prosecutorial discretion. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). In determining whether the DFE applies, a court looks only at whether the conduct or decision at issue is "susceptible" to policy analysis from an objective perspective, without looking at subjective

17

intent. *Reynolds*, 549 F.3d at 1112. Here, the government's decisions to refer J.P. for prosecution and the subsequent decision to charge her for violating 8 U.S.C. § 1324 were plainly discretionary choices and concerns about "subjecting the prosecutor's motives and decision making to outside inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999).

Although J.P. was not ultimately prosecuted, that does not eliminate CBP's discretion to refer her for prosecution. The decision by CBP to initiate prosecution for a criminal offense is a discretionary act, regardless of whether prosecutors ultimately chose to pursue the case. Indeed, here the U.S. Attorney's Office indicted J.P. before a grand jury for a violation of § 1324, and she was held in criminal detention for more than a month. A discretionary determination by the U.S. Attorney's Office to drop the prosecution does not mean that CBP's decision to refer J.P. for prosecution was not a discretionary act.

The government's decisions regarding where to detain J.P. for immigration proceedings upon her release from criminal detention were also discretionary and susceptible to policy analysis. The government has the express statutory authority to "arrange for appropriate places of detention for noncitizens "detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1); *see also Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1440 (9th Cir. 1986) ("Congress has placed the responsibility of determining where [noncitizens] are detained within the discretion of the Attorney General."); *Gandarillas-Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS [now DHS] necessarily has the authority to determine the location of detention of an "noncitizen" in deportation proceedings . . . and therefore, to transfer [noncitizens] from one detention center to another."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (finding that the Attorney General has discretion over the location of

detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that the "Attorney General's discretionary power to transfer [noncitizens] from one locale to another, as she deems appropriate, arises from" statute); *Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005) (explaining that, following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" now mean the Secretary of Homeland Security).

Because the government has statutorily granted discretion to decide whether and where to detain a noncitizen pending resolution of immigration proceedings, and because the decision implicates policy issues, the decision falls within the FTCA's DFE. *Mirmehdi v. United States*, 662 F.3d 1073, 1081-82 (9th Cir. 2011); *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (decisions on whether to detain or release are policy-based decisions protected by DFE); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions on whether to detain or release are policy-based decisions protected by DFE); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("[A]ssignment to particular institutions or units . . . . must be viewed as falling within the discretionary function exception to the FTCA.").

This discretion necessarily encompasses decisions regarding with whom a noncitizen will be detained, including whether an adult and a minor can be detained in the same facility and whether to detain family members together. *Peña Arita v. United States,* 470 F. Supp. 3d 663, 691-92 (W.D. Tex. 2020) (decisions by DHS to separate family members are protected by DFE). Although the *Flores* Agreement contains some requirements regarding the detention of minors, it does not specifically prescribe any one course of action and therefore does not remove the government's discretion. The *Flores* Agreement does not require the release of a parent or mandate that a parent be housed with a child, and indeed it does not apply to parents at all.

19

*Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759 at \*14-15; *Bunikyte*, 2007 WL 1074070 at \*16.

Here, Plaintiffs can cite no statute, regulation, or policy that prescribed in January 2018 a specific course of action that the government was required to take in connection with J.P.'s prosecution and immigration detention. Instead, the challenged decisions were the result of the exercise of discretion. Accordingly, the exercise of the government's statutory authority regarding whether to refer J.P. for prosecution and whether and where to detain her for immigration proceedings is protected by the DFE.

### b.    Separation of J.P. from M.A.

For similar reasons, the DFE also covers the determination that M.A. was an UAC within the meaning of the TVPRA. *See* 6 U.S.C. § 279(g)(2). Whether a parent is "available to provide care and physical custody" is a policy question vested in federal officials. *See D.B. v. Preston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied "noncitizen" children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016); *see also Baie v. Sec'y of Def.*, 984 F.2d 1375, 1377 (9th Cir. 1986) ("[I]nterpretation of the statute is a plainly discretionary administrative act the 'nature and quantity' of which Congress intended to shield from liability under the FTCA."). The DFE accordingly applies to the government's determination that, due to J.P.'s detention and referral for prosecution, M.A. should be deemed unaccompanied and accordingly transferred to the custody of ORR. *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 287 (3d Cir. 1995) (holding that a decision is protected by the DFE when it "necessarily reflects the decisionmaker's judgment that it is more desirable to make a decision

20

based on the currently available information than to wait for more complete data or more confirmation of the existing data").

Plaintiffs also cite CBP policy, specifically CBP's National Standards on Transport, Escort, Detention and Search ("TEDS"), in an attempt to show that their separation violated non-discretionary duties. Plaintiffs cite sections that state "CBP will maintain family unity to the greatest extent operationally feasible, absent a legal requirement or an articulable safety or security concern that requires separation" and that "[g]enerally family units with juveniles should not be separated." *See* TEDS §§ 1.9, 5.6. However, that language does not create a mandatory, specific duty to keep mother and son together. In *Tippett v. United States*, 108 F.3d 1194 (10th Cir. 1997), the Tenth Circuit addressed discretionary guidelines that used similar language, including "feasible" and "should." There, the Court considered whether agency guidelines created a mandatory duty for a Yellowstone National Park ranger to protect the Plaintiff from a dangerous animal. The operative guidelines provided that "[t]he destruction of a native animal is acceptable only when relocation is not a feasible alternative; the animal was injured or deceased through human-induced impacts . . . ; or human safety is a concern . . . ." *See id*. at 1198. Another guideline provided that a road "should be temporarily closed by any NPS employee when imminent life threatening or potential serious injury situations exist." *Id*. The court concluded that implementation of both these guidelines implicated the exercise of discretion. *Id.* at 1199.

A policy that uses terms such as "feasible" and "should" did not unequivocally require that Plaintiff, J.P., remain with her child. *See, e.g.*, *Lane v. United States*, 918 F. Supp. 864, 870 (E.D. Pa. 1996) (holding that where statute provided that agency "shall, to the maximum extent feasible," seek out prisoners of war and provide them with information, "Congress explicitly left

it to the [agency] to decide the manner and means of carrying out its directive"); *Cuevas v. Westerman*, No. 1:14-CV-133, 2016WL 11529760, at *6 (S.D. Tex. Nov. 10, 2016) (finding policy requiring CBP to assign two agents to guard a detainee in the hospital to be discretionary, where the policy used terms such as "if manpower permits" and "whenever operationally feasible"); *Gould Elecs. Inc. v. United States*, No. CIV.A.99-1130, 2002 WL 27834, at *8 (E.D. Pa. Jan. 10, 2002) (holding that executive order's use of "so far as feasible" language "is clearly precatory" and "is not sufficiently specific or mandatory to remove the element of choice from defendant for the purposes of the discretionary function [exception]"); *see also Weissich v. United States*, 4 F.3d 810, 814 (9th Cir. 1993) (noting that use of the word "should" in a policy "is suggestive, not mandatory"); *Whalen v. United States*, 29 F. Supp. 2d 1093, 1097 (D.S.D. 1998) ("Obviously, statements discussing what 'should' be done cannot be considered mandatory."). Contrary to Plaintiffs' allegation that "[t]here was no legal requirement" for CBP to separate them, see Compl. ¶ 117. Defendant was authorized to prosecute J.P. and required by statute to transfer M.A. to ORR custody once he became a UAC under federal law because J.P. was placed into criminal custody. *See* 8 U.S.C. § 1232(b)(3). Accordingly, TEDS is of no assistance to Plaintiff regarding their separation.

In the end, this case is about government actions that were subject to discretion and susceptible to policy analysis. Plaintiffs cannot plausibly suggest that the government was *required* to release them into the interior, that the government did not have discretion to prosecute J.P., or that the government did not have discretion to determine that M.A. was a UAC, particularly when J.P. had been referred for prosecution and was ultimately held in criminal detention for more than a month. *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1134 (10th Cir. 1999) ("FTCA claims are not vehicles to second-guess policymaking. That principle

requires a federal court to dismiss an FTCA claim if jurisdiction is so dependent on allegations about government officials' intent or decision making process that resolving the claim would require judicial inquiry into those subjective matters").

### 3.   Conditions of Confinement

The DFE also bars Plaintiffs' remaining allegations concerning the conditions of their confinement, including the alleged temperature, food, and crowded conditions in the holding center and the pair's inability to communicate after being separated. Courts have repeatedly held that claims based on acts or omissions relating to conditions of confinement are barred by the DFE because they involve discretionary decisions susceptible to policy considerations. For example, in *Peña Arita*, the court rejected the contention that transfer decisions including where and how to house detainees or provide medical care were "nondiscretionary," finding that government decision-making regarding conditions of confinement was "susceptible to policy analysis" and that the court "must generally defer to the expertise of prison officials and is not to substitute its judgment for the consideration of such officials." 470 F. Supp. 3d at 691; *see also Antonelli v. Crow*, 2012 WL 4215024, *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, were barred by DFE); *Lineberry v. United States*, 2009 WL 763052, *6 (N.D. Tex. Mar. 23, 2009) (DFE bars "allegation of negligent overcrowding"); *Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) (BOP's provision of telephone services is "a matter committed to its discretion that will not be second-guessed through an FTCA claim"); *S.E.B.M. v. United States*, 2023 WL 2383784, *16 (D.N.M. Mar. 6,

2023) ("The *Flores* Agreement provides no time parameters for how long or frequent calls between children and their family members should be.").

Plaintiffs also cite various provisions in TEDS for claims related to their alleged detention at the El Paso Processing Center stating that those provisions required CBP to provide various access to amenities. Compl. ¶¶ 120-124. Plaintiffs cite to U.S. Border Patrol's Short-Term Custody Policy which does not apply to their custody at the port of entry, which is run by the CBP OFO.[4] In the same manner the DFE applies to the arrest and detention of Plaintiffs, it also applies to their condition of confinement, the DFE "lies at the heart of the DHS law enforcement function." *Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020).

## C. Exception for Actions Taken While Reasonably Executing the Law

Plaintiffs' claim regarding the decision to transfer M.A. to ORR custody is also independently precluded because the FTCA prevents the United States from being held liable for a claim "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). In other words, if government employees "act pursuant to and in furtherance of regulations," any resulting harm "is not compensable" under the FTCA. *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim based on "enforcement of 'rules and regulations'" barred by § 2680(a)).

The exception "bars tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was neither "desirable nor intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a

---

[4] https://www.cbp.gov/document/publications/cbp-organization-chart

damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective"). The upshot is that when a government employee's actions are authorized by statute or regulation—even if that statute or regulation is later found unconstitutional or invalid—the FTCA claim must be dismissed. *Bob Davis Packing Co. v. United States*, 443 F. Supp. 589, 593 (W.D. Tex. 1977), *aff'd* 584, F.2d 116 (5th Cir. 1978); *Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950); *FDIC v. Citizens Bank & Tr. Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th Cir. 1979); *Borquez v. United States*, 773 F.2d 1050, 1052-53 (9th Cir. 1985); *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1160-61 & n.5 (1st Cir. 1987) (exception barred claim that FBI destroyed owner's prototype by dismantling it during criminal investigation); *Porter v. United States*, 473 F.2d 1329, 1337 (5th Cir. 1973) (exception barred property damage claim of Lee Harvey Oswald's widow, who alleged that, in carrying out their appointed functions, FBI personnel had stained or discolored documents and personal effects by using chemical treatment during investigation into Kennedy assassination).

Here, federal agencies are required to "transfer the custody" of children to the care of ORR "not later than 72 hours after" determining that there is no parent available to provide care and physical custody absent exceptional circumstances. 8 U.S.C. § 1232(b)(3). In M.A.'s case, the government determined that J.P. was unable to provide care and physical custody for M.A., on account of its discretionary decision to detain J.P. and refer her for prosecution. *See S.E.B.M. v. United States*, 2023 WL 2383784, 2023 U.S. Dist. LEXIS 37232, *38 (D.N.M. Mar. 6, 2023) ("The act of charging, prosecuting, and jailing S.E.B.M's father made S.E.B.M. a UAC which in turn required her to be cared for elsewhere."). The TVPRA required that M.A. be transferred to

ORR custody, and the enforcement of that statutory command—resulting in M.A.'s separation from J.P.—cannot form the basis of an FTCA claim.

### D.    No Private-Person Analogue

Plaintiffs' claims must also be dismissed because the challenged government actions have no private-person analogue. The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." *Id*. § 2674. The FTCA does not waive sovereign immunity for claims against the United States based on governmental action "of the type that private persons could not engage in and hence could not be liable under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (quotation omitted).

The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA [even] in the performance of activities which private persons do not perform." *United States v. Olson*, 546 U.S. 43, 46 (2005) (quotation omitted); *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012). Though the private analogue need not be exact, a Plaintiff must offer "a persuasive analogy" showing that the government actor would be subject to liability under state law if a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

Because only the federal government has the authority to enforce federal criminal and immigration laws and make determinations concerning detention, there is no private person analogue that could support a claim under the FTCA. *Fuentes-Ortega v. United States*, No. CV-

26

22-00449-PHX-DGC, 2022 WL 16924223, at *4 (D. Ariz. Nov. 14, 2022) (quoting *Arvanis v. Noslo Eng'g Consultants, Inc.*, 739 F.2d 1287, 1290 (7th Cir. 1984). The alleged harms here stem from the government's decision to enforce federal immigration laws and to hold a parent in custody pending prosecution and immigration proceedings, resulting in her child's placement in the care and custody of ORR. The United States has not waived its sovereign immunity for such decisions to enforce federal law, and the decisions have no private-person counterpart. *E.g.*, *Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (decision regarding whether to take enforcement action under federal law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action); *Ryan v. ICE*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign."); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("because no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well"); *Elgamal v. United States*, 2015 WL 13648070, *5 (D. Ariz. July 8, 2015) (recognizing that "immigration matters" are "an inherently governmental function"); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("there is, as a general matter, no private analogue to governmental withdrawal of immigration benefits"); *Mazur v. United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill. 1997) (regarding naturalization of noncitizens, "only the United States has the power to act" and "there is no private analog under state law").

### E.   Independent Contractor Exception

The allegations regarding the care of M.A. at the ORR facility in Arizona are barred by the FTCA's independent contractor exception. The FTCA "was never intended . . . to reach employees or agents of all federally funded programs that confer benefits on people." *United*

*States v. Orleans*, 425 U.S. 807, 813 (1976). It waives sovereign immunity only for tortious conduct of an "employee of the Government," and it expressly "excludes 'any contractor with the United States.'" *Id.* (quoting 28 U.S.C. § 2671). The FTCA thus preserves sovereign immunity for torts committed by government contractors or their employees. *Id.*

The independent contractor exception bars Plaintiffs' claims to the extent they are based on M.A.'s transfer to a shelter in Arizona where he was allegedly bullied and suffered a split lip. Compl. ¶¶ 56 – 60. 8 U.S.C. § 1232(b)(3) (immigration officials must transfer child to ORR custody within 72 hours); *Flores v. Barr*, No. CV 85-4544, 2020 U.S. Dist. LEXIS 97047, *23 (C.D. Cal. Apr. 24, 2020) (referring to "ORR care provider BCFS Baytown"). The complaint does not allege that the staff in these facilities were employees of the United States, and, indeed, ORR contractors that provide shelter for UACs are not employees of the United States within the meaning of the FTCA. *Walding v. United States*, 955 F. Supp. 2d 759, 791-811 (W.D. Tex. 2013) (independent contractor exception barred claim that United States negligently failed to ensure health and safety of minors detained at minor detention facility).

The complaint also does not allege that ORR negligently selected or negligently supervised the Arizona facility—and for good reason. As the *Walding* court noted, the DFE bars such claims, because the selection of a contractor to provide custody and care of UACs is left to ORR's discretion. 955 F. Supp. 2d at 771-72 ("the ultimate choice of facility for housing unaccompanied "noncitizen" children is a decision vested with policy considerations"). ORR also has discretion over how to supervise its grantees, which involves "policy decisions concerning how to allocate its resources to oversee the facilities and personnel." *Id.* at 783; *see also In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 995 (9th Cir. 1987) (holding

that DFE barred claim that government negligently supervised contractor's compliance with safety procedures and guidelines).

## III.   Failures in the Complaint to State a Claim

Even if the court were to conclude that Plaintiffs' claims are not precluded by either the FTCA's time bar or its exceptions to the waiver of sovereign immunity, the claims should still be dismissed for failure to state a claim upon which relief may be granted. First, Plaintiffs' claims challenge conduct that is considered privileged under Texas law. And second, Plaintiffs have failed to state a claim under Texas law for intentional infliction of emotional distress (Count 1), negligence (Count 2), abuse of process (Count 3), malicious prosecution (Count 4), false imprisonment (Count 5), child abduction (Count 6), and loss of consortium (Count 7). Accordingly, the claims should be dismissed for failure to state a claim under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

### A.   Privileged Conduct

The conduct that Plaintiffs challenge here—the separation of J.P. and M.A., as a result of J.P.'s referral for prosecution and immigration detention—was privileged under Texas law. Texas law applies here because the FTCA makes the United States liable for the "negligent or wrongful act of omission" of federal employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with *the law of the place where the act or omission occurred*." 28 U.S.C. § 1346(b) (emphasis added). Actions that may otherwise subject a person to liability are not tortious if the conduct is privileged. *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1231 (5th Cir. 1988). And the United States is entitled to invoke state law privileges in FTCA cases. *Villafranca v. United States*, 587 F.3d 257 (5th Cir. 2009) (Texas's civil privilege defense statute applied in FTCA action alleging assault by federal

officer); *McElroy v. United States*, 861 F. Supp. 585 (W.D. Tex. 1994) ("the United States may invoke any defenses available to individual law enforcement officers under Texas law"); *Hernandez v. United States*, 2018 WL 4103015, *3-4 (S.D. Tex. July 2, 2018) ("the Government may look to state law privileges as a defense to FTCA claims"). Privileges that apply to public officials performing their official functions with legal authority apply equally in FTCA cases. *Tovar v. United States*, 2000 WL 425170, *6-7 (N.D. Tex. Apr. 18, 2000) (dismissing false imprisonment claim and finding that, because federal immigration statutes authorized the challenged conduct, the government's conduct was privileged), *aff'd* 244 F.3d 135 (5th Cir. 2000); *Davila v. United States*, 713 F.3d 248 (5th Cir. 2013) (finding no FTCA liability because Texas's "civil privilege defense" protects officers who use force when they reasonably believe force is necessary, and finding no liability for false imprisonment because Texas's definition of false imprisonment excludes conduct undertaken under authority of law and a federal statute permitted the actions in question); *Saldana v. United States*, 248 F.3d 1139 (5th Cir. 2001) (same); *Garza v. United States*, 881 F. Supp. 1103 (S.D. Tex. 1995) (alleged assault was privileged because the federal agents were enforcing federal immigration law).

Here, the government's actions were privileged because, as explained above, the government was authorized to place M.A. in ORR custody after deciding to detain and prosecute J.P. *Caban v. United States*, 728 F.2d 68 (2d Cir. 1984), provides an illustrative example.[5] There, the government detained the plaintiff when he arrived at JFK airport from the Dominican Republic because he was not able to show satisfactorily that he was an American citizen. The government ultimately decided that he was an American citizen and released him after a six-day

_____

[5] Defendants note that after M.A. was placed into ORR custody, he was transferred to an ORR facility in Arizona. Even under Arizona law probable cause is an absolute defense to claims of false arrest and false imprisonment. *Hockett v. City of Tucson*, 139 Ariz. 317, 678 P.2d 502, 505 (Ariz. Ct. App. 1983).

detention. He sued under the FTCA for false imprisonment, but New York's statutory definition of false imprisonment provided that false imprisonment does not occur if the confinement was "otherwise privileged." *Caban*, 728 F.2d at 72. The Second Circuit held that the government's conduct was "otherwise privileged" because a federal immigration statute provided that a person entering the United States who cannot clearly show his right to entry "shall be detained for further inquiry." *Id*. at 71 (quoting 8 U.S.C. § 1225(b) (1976)).

The same result applies here because the separation at issue was authorized by federal law. *Accord S.E.B.M. v. United States*, 2023 WL 2383784, 2023 U.S. Dist. LEXIS 37232, *19 (D.N.M. Mar. 6, 2023) (where government separated minor child from parent, the government's actions "were protected by its privilege to prosecute"). CBP had the legal authority to refer J.P. for prosecution for a violation of noncitizen smuggling, 8 U.S.C. § 1324, and were thus required to transfer M.A. to ORR custody under the TVPRA. Moreover, ICE had the legal authority to detain J.P. while her immigration proceedings were pending. Accordingly, the conduct here was privileged under Texas law.

### B.  Pleading Deficiencies

As explained above, Plaintiffs' claims are not cognizable under the FTCA or Texas law. But even if they were, Plaintiffs have not pleaded facts that could support the essential elements of their claims that could give rise to a plausible right of recovery, and the claims should be dismissed for that reason as well.

### 1.  Intentional Infliction of Emotional Distress (Count 1)

Other deficiencies aside, Plaintiffs have not stated a claim for intentional infliction of emotional distress. The essential elements of intentional infliction of emotional distress in Texas are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme or

31

outrageous; (3) the actions of the defendant caused the Plaintiff emotional distress; and (4) the Plaintiff's resulting emotional distress was severe. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993); *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999). In *Wornick*, the Texas Supreme Court described the outrageous conduct element as requiring conduct that "goes beyond all possible bounds of decency as to be regarded as atrocious and utterly intolerable in a civilized society." 856 S.W.2d at 734. The court must determine as a matter of law whether the alleged conduct may reasonably be regarded as so extreme and outrageous that it permits recovery. *Id.*

Here, Plaintiffs' claim for intentional infliction of emotional distress is based largely on their separation. Compl. ¶¶ 139, 140.

Because the Grand Jury found probable cause to indict Plaintiff J.P., the fact that J.P. was charged and detained, which necessitated the separation of J.P. from M.A. does not constitute outrageous behavior. *See Dillard Dep't Stores v. Silva*, 106 S.W.3d 789, 796-97 (Tex. App.—Texarkana 2003, pet. granted) (where probable cause exists for an arrest, the decision to initiate criminal proceedings "cannot constitute outrageous behavior"), *aff'd in part*, *mod. in part on other grounds*, 148 S.W.3d 370 (Tex. 2004) citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 67, 42 Tex. Sup. Ct. J. 274 (Tex. 1998). Rather, the separation is a necessary consequence of her criminal charges. *Aguilar v. ICE*, 510 F.3d 1, 22 (1st Cir. 2007) (every detention pending removal of a parent "runs the risk of interfering in some way with the parent's ability to care for his or her children"); *Payne-Barahona v. Gonzalez*, 474 F.3d 1, 3 (1st Cir. 2007) (holding that, if a child had a constitutional right to object to his parent's removal, then it would be "difficult to see why children would not also have a constitutional right to object to a parent being sent to prison or, during periods where the draft laws are in effect, to the conscription of a parent for prolonged and dangerous military service"). It therefore cannot

32

constitute an intentional infliction of emotional distress. And to the extent Plaintiffs intend to claim that alleged threats and insults made by various guards (Compl. ¶¶47, 48, 84) constituted an intentional infliction of emotional distress, the allegations still fail to state a claim, because liability "does not extend to mere insults, indignities, [or] threats." *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir. 1993). This claim should be dismissed for this reason in addition to the others.

### 2. Negligence (Count 2)

Plaintiffs' negligence claim should be dismissed for two reasons. First, Texas law does not recognize a cause of action for negligent infliction of emotional distress. By layering a negligence claim on top of their claim for intentional infliction of emotional distress, the Plaintiffs attempt to plead a claim for negligent infliction of emotional distress. Compl. ¶¶ 136-142. Texas law does not recognize such a claim without physical injury regardless of how severe the emotional distress allegedly was. *Garza v. United States*, 881 F. Supp. 1103, 1008 (S.D. Tex. 1995) (Plaintiffs' layering of negligence claim on top of other torts sounded "suspiciously like an impermissible claim for negligent infliction of emotional distress) (citing *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993)).

Second, even if the negligence claim were not dismissed for the reason above, the claim should still be dismissed on the ground that Plaintiffs have not identified an applicable duty under Texas law. *Kristensen v. United States*, 993 F.3d 363, 368 (5th Cir. 2021) (Plaintiff claiming negligence under Texas law must show "the existence of a legal duty"). Plaintiffs have not identified any duty under Texas law to keep them together in the context of prosecution and immigration detention. And indeed, no such duty existed. *See Rathod v. Barr*, 2020 WL 1492790, *5 (W.D. La. Mar. 5, 2020) (in habeas matter, noting that a noncitizen "does not have a

right to be housed in any particular facility, nor does this court have the authority to order ICE to house [a noncitizen] in any particular facility"); *Davis v. Carlson*, 837 F.2d 1318, 1319 (5th Cir. 1988) (denying mandamus and holding that government has "no clear duty—nor, indeed, any duty" to transfer Plaintiff to facility near his wife).

### 3.    Abuse of Process (Count 3)

Plaintiffs also fail to plead facts supporting the essential elements of their claim for abuse of process (Count 3). Abuse of process is the malicious use or misapplication of process to accomplish an ulterior purpose. *Hunt v. Baldwin*, 68 S.W.3d 117, 129 (Tex. App.—Houston [14th Dist.] 2001, no pet.). The elements are: (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process; and (3) damage resulted to the Plaintiff as a result of the illegal act. *Id.*; *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.—Houston [14th Dist.] 1994, writ denied). The tort assumes that the original issuance of a legal process was justified, but that the process itself was subsequently used for a purpose for which it was not intended. *Hunt*, 68 S.W.3d at 130. The improper purpose "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex. App.—Houston (1st Dist.), no writ history). When the process is used for the purpose for which it is intended, no abuse of process has occurred. *Hunt*, 68 S.W.3d at 130.

Here, Plaintiffs have not pleaded facts showing that any federal employee "made an illegal, improper, or perverted use of [] process, a use neither warranted nor authorized by the process." *Hunt*, 68 S.W.3d at 129. Instead, they allege the process was used to pursue criminal

34

and removal proceedings against a noncitizen who was suspected of "noncitizen" smuggling. As noted above, the fact that charges were dismissed against her does not render the process illegal or invalid. The allegations in the complaint do not state a claim for abuse of process.

### 4.        Malicious Prosecution (Count 4.)

A claim of malicious prosecution is a common law tort that protects an individual's "interest in freedom from unjustified litigation." *Doe v. State*, 2 F.3d 1412, 1420 n.15 (5th Cir. 1993); *Beker Phosphate Corp. v. Muirhead*, 581 F.2d 1187, 1188 n.1 (5th Cir. 1978). To sustain a malicious prosecution claim, Texas law requires that a Plaintiff show that "(1) a criminal action commenced against him; (2) that the prosecution was caused by the defendants or with their aid; (3) that the action terminated in the plaintiff's favor; (4) that the plaintiff was innocent; (5) that the defendants acted without probable cause; (6) that the defendant acted with malice; and (7) that the criminal proceeding damaged the Plaintiff." *Tittle v. Raines*, 231 F. Supp. 2d 537, 550 (N.D. Tex 2002).

Courts must presume that the defendant acted reasonably and had probable cause to initiate criminal proceedings. *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997) (citing *Akin v. Dahl*, 661 S.W. 2d 917, 920 (Tex. 1983)). To rebut this presumption, the plaintiff must allege facts that plausibly support the conclusion that the motives, grounds, beliefs, or other information upon which the defendant acted did not constitute probable cause. *Id.* at 518.

Here, Plaintiff J.P. cannot satisfy the requirements for a malicious prosecution claim because probable cause existed to commence prosecution against her. Under a malicious prosecution claim, the probable cause analysis only requires that the court find a basis for an officer to believe to a fair probability that a violation occurred. *Tittle* 231 F. Supp., 2d at 551

(citing *Gordy v. Burns*, 294 F.3d 772, 728 (5th Cir. 1994.)) As applied to Plaintiff J.P.'s prosecution, the court specifically made a finding of probable cause on January 19, 2018. See Indictment.

### 5.        False Imprisonment (Count 5)

To establish a claim for false imprisonment, a claimant must show: (1) a willful detention, (2) without consent, and (3) without authority of law. *Wal—Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Davis v. Prosperity Bank*, 383 S.W.3d 795, 799 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Plaintiffs allege that their claim for false imprisonment is based on the theory that they did not consent or agree to their detention for the purposes of deterrence and that M.A. was detained in violation of the *Flores* agreement.

Plaintiffs' claim for false imprisonment fails to meet the requirements under Texas law on its face. Plaintiffs do not dispute, nor can they, that Defendant had authority under the law to detain them at the border, as Plaintiffs did not have a legal right to enter the United States. Further, as set forth throughout this memorandum, Defendant had authority to detain and transfer custody of M.A. to ORR until a suitable placement with a relative could be found, and M.A.'s transfer to ORR custody did not violate the *Flores* agreement.

### 6.        Child Abduction (Count 6)

Plaintiffs' wrongful child abduction claim should be dismissed because Plaintiffs fail to allege a claim for wrongful child abduction under Texas state law. The Texas common law tort for child abduction is codified as "Parental Liability – Civil Liability for Interference with Possessory Interest in Child" in the Texas Family Code. However, the statute itself and the post and pre-statutory case law on child abduction claims make it clear that this tort only applies when a person (usually a relative) violates a prior parental or custody *order* from the court.

36

For example, the statute provides that "[a] person who takes or retains possession of a child or who conceals the whereabouts of a child in violation of a possessory right of another person may be liable for damages to that person." Tex. Fam. Code § 42.002(a). And "possessory right" is defined as "a court-ordered right of possession of or access to a child, including conservatorship, custody, and visitation." Tex. Fam. Code § 42.001(2). "Order" is defined as "a temporary or final order of the court of this state or another state or nation." Tex. Fam. Code § 42.001(1); *see also Finley v. May*, No. 07-17-233-CV, 2017 WL 5763076, at *3 (Tex. App. – Amarillo, Nov. 28, 2017) (explaining that possessory rights were "those rights dictated in a court order"); *Hardy v. Mitchell*, 195 S.W.3d 862, 864-65 (Tex. App. – Dallas 2006) (holding that claim cannot be characterized as a claim for interference with a possessory right under chapter 42 of the Texas Family Code because the child was not the subject of any court order). And to the extent Plaintiffs rely on a non-statutory common law claim of wrongful child abduction, cases similarly limit those claims to circumstances where custody or other court orders were violated. *See, e.g.*, *Silcott v. Oglesby*, 721 S.W.2d 290, 293 (Tex. 1986) (recognizing a common law actionable tort "for child abduction in violation of a *custody order*") (emphasis added). The government is not aware of any Texas case where the common law application of wrongful abduction applies outside the context of an alleged violation of a court order.

Here, Plaintiffs do not allege facts sufficient to plead wrongful child abduction in violation of a custody order or other order from a court of law. Accordingly, their wrongful child abduction claim should be dismissed.

### 7.     Loss of Consortium (Count 7)

Finally, Plaintiffs' claim for loss of consortium is not a valid claim under Texas law. Plaintiffs both claim loss of consortium allegedly as a result of severe, permanent, and disabling

emotional and psychological injuries allegedly caused by Defendant, including the physical manifestations of psychological injuries. Compl. ¶¶ 80, 136-37, 155, 162, 170, 175. While Plaintiff J.P. complains of foot and vision issues allegedly due to the conditions she was kept in, Compl. ¶ 136, no other physical injuries are mentioned in relation to her loss of consortium claims.

Under Texas law, a claim for loss of consortium is derivative of the injured family member's tort action. Thus, the person seeking to recover damages for loss of consortium must establish the tortfeasor's liability to the injured family member. *Whittlesey v. Miller*, 572 S.W.2d 665, 666-667 (Tex. 1978); *Upjohn Co. v. Freeman*, 885 S.W.2d 538, 547-548 (Tex. App. – Dallas 1994, writ denied). This liability may be based on the tortfeasor's negligence or intentional tortious conduct but may not be based on malicious prosecution because of the conflicting policies underlying malicious prosecution actions. *Whittlesey*, 572 S.W.2d at 666; *Browning-Ferris Industries, Inc. v. Lieck*, 881 S.W.2d 288, 294-295 (Tex. 1994).

Texas "does not recognize claims for parental loss of consortium based purely on emotional harm." *Rodriguez v. H.E. Butt Grocery Co., L.P.*, No. 13-20-00467-CV, 2021 WL 4597106, at *8 (Tex. App.—Corpus Christi Oct.,7, 2021, no pet.). Thus, a party seeking to recover damages for loss of consortium based on an injury to a parent-child relationship must establish that the other party to the relationship "suffered a *'serious physical injury.'*" *Browning-Ferris*, 881 S.W.2d at 294 (Tex. 1994.) (emphasis added); *see also Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 99 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (claimant "may not recover for loss of consortium absent a physical injury that is serious, permanent, and disabling"). Importantly, loss of consortium does not include an element of mental anguish. *Reagan v. Vaughn*, 804 S.W.2d 463, 467 (Tex. 1990)

38

Here, Plaintiffs have failed to plead injuries sufficient to show a serious *physical* injury as required by Texas law. *Reagan*, 804 S.W.2d at 465-66. As mentioned above, the injuries allegedly sustained by both Plaintiffs are emotional. The only physical injuries alleged in the Complaint—J.P.'s alleged foot and vision injuries—do not rise to the level of severity required to maintain a loss of consortium claim. Compl. ¶ 136; *Reagan* at 467.

### Conclusion

For the above reasons, the case should be dismissed under Rule 12(b)(1) or 12(b)(6).

Respectfully submitted,

GREGORY K. HARRIS
UNITED STATES ATTORNEY

By:       By:/s/ Kathy L. Swett
          Kathy L. Swett
          IL Atty # 6316491
          CA Atty # 278531
          Assistant United States Attorney
          1830 Second Avenue, Ste. 250
          Rock Island, Illinois 61201
          Telephone: 309-283-3316
          Email: kathy.swett@usdoj.gov

39

**CERTIFICATE OF SERVICE**

I certify that on August 4, 2023, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Central District of Illinois by using the CM/ECF system. Participants in the case who are CM/ECF users will be served by the CM/ECF system.

/s/Kathy L. Swett