UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| J.P., on her own and on behalf of her minor, child, M.A., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | No. 23-CV-1136 |

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE
TO DEFENDANT'S MOTION TO DISMISS**

NOW COMES the Defendant, the United States of America, by United States Attorney Gregory K. Harris, and through Assistant United States Attorney Kathy L. Swett and in reply to Plaintiffs' Response to Defendant's Motion to Dismiss, states as follows.

## INTRODUCTION

Plaintiffs' suit should be dismissed with prejudice. Plaintiffs failed to file their claims in a timely manner, the United States has not waived sovereign immunity, and their claims for malicious prosecution and false imprisonment fail under state law.

## ARGUMENT

### I.  Plaintiffs' Case is Time-Barred.

The Government's Motion established that Plaintiffs' case is untimely. Plaintiffs do not deny that they failed to submit their administrative claims within two years after their apprehension, detention, separation, and eventual release from federal custody. Instead, Plaintiffs argue a continuing violation and that that they are entitled to equitable tolling. ECF #21, pp. 9-14. They fail to make either showing.

1

### a. Plaintiffs have not established a continuing violation.

Plaintiffs' contention that a continuing violation tolled their claims is misplaced, and the cases on which they rely undermine their argument. In particular, the Seventh Circuit in *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001), made clear that a continuing violation lasts only as long as "defendants had the power to do something about" the harm to the plaintiff, which in that case was "until he left the jail." *Id.* at 318.[1] Likewise here, as discussed in the government's Motion, any conceivable ongoing violation ended, at the absolute latest, when J.P. was released from federal custody in June 2018. *See* ECF #13, p. 10. Plaintiffs submitted their claim more than two years later.[2]

### b. Plaintiffs are not entitled to equitable tolling.

"Equitable tolling is reserved for rare instances in which a plaintiff was prevented in some extraordinary way from filing his complaint in time." *P.W. v. United States*, 990 F.3d 515, 523 (7th Cir. 2021). To be entitled to equitable tolling, the Plaintiff "bears the burden to establish that (1) she 'diligently' pursued her claim; and (2) 'some extraordinary circumstances'

---

[1] Similarly, as Plaintiffs themselves acknowledge, in *Alexander v. United States*, the plaintiff "allege[d] that the tortious conduct—which included witness intimidation, perjury, and suborning of perjury—continued right through Alexander's trial." 721 F.3d 418, 421 (7th Cir. 2013).

[2] Plaintiffs argue in passing that the government failed to take affirmative steps to reunite them sooner, "despite a court-ordered obligation to do so." ECF #21, p. 11-12. As an initial matter, Plaintiffs have not established—and did not allege in their complaint—that the government violated any "court-ordered obligation" to reunite them. The only court order they reference is the June 26, 2018 preliminary injunction in *Ms. L.*, which "ordered reunification of the children *in ORR custody* with their parents within 30 days." 330 F.R.D. 284, 286 (S.D. Cal. March 8, 2019) (emphasis added). But M.A. had been released from ORR custody into the custody of family members on March 11, 2018, and accordingly Plaintiffs were not covered by the injunction that issued three months later. ECF #1, ¶ 59. Although Plaintiffs may be part of the broad *Ms. L.* class, the preliminary injunction did not apply to them. At any rate, even if Plaintiffs had established a failure to comply with the injunction, that would not toll their claims or establish a continuing violation because they have not shown that their separation long after both of them had been released from federal custody constitutes a distinct continuing tort under state law.

prevented her from timely filing her complaint." *Id.* (quoting *Credit Suisse Securities (USA) LLC v. Simmonds*, 566 U.S. 221, 225 (2012)). Plaintiffs can establish neither: they did not face extraordinary circumstances that prevented them from filing a timely action and they did not diligently pursue their claim.

The Seventh Circuit has held that time spent in immigration custody, "incarceration, lack of resources, and ignorance of the law are not 'extraordinary circumstances' that merit equitable tolling." *Molina-Garcia v. Fardon*, 754 Fed. Appx. 475, 477 (7th Cir. 2019). In *Molina-Garcia*, the plaintiff argued that the limitations period for his malicious prosecution and false imprisonment claims should have been tolled during his time in immigration custody. *Id*. The court rejected that argument and also found that even if the plaintiff could explain the delay caused by seven months in immigration detention, he could not account for why he failed to file a claim in the months that followed his release. *Id.* Likewise here, Plaintiff J.P. was released from federal custody in June 2018 and she and M.A. were reunited in the United States in February 2019. ECF #1, ¶ 86. Yet Plaintiffs did not submit their administrative claims until July 2020, more than a full year after J.P. was paroled into the United States and reunited with M.A.

Plaintiffs also rely on *United States v. Kwai Fun Wong*, 575 U.S. 402, 420 (2015), but, again, that case does not support their position. In *Wong*, one of the plaintiffs was found to have "'exercis[ed] due diligence' in attempting to amend her complaint before the statutory deadline." 575 U.S. at 406. The other *Wong* plaintiff delayed in filing her administrative claim because she first learned of a government defendant late in the litigation process. *Id.* at 406-407. Neither situation applies here. Plaintiffs J.P. and M.A. knew that federal officers had separated and detained them, and yet they failed to file an administrative claim within the two-year limitations period. ECF #13, p. 10.

Dismissal for untimeliness is proper when the plaintiff's allegations establish that the statute of limitations bars recovery. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). Because Plaintiffs are not entitled to equitable tolling and have not shown a continuing violation, this case should be dismissed.

## II. Sovereign Immunity Bars Plaintiffs' Claims

### a. The discretionary function exception applies to Plaintiffs' claims.

Plaintiffs argue that that the discretionary function exception to the FTCA's waiver of sovereign immunity does not apply here because the decision to prosecute J.P. for noncitizen smuggling under 8 U.S.C. § 1324 was in furtherance of the Zero Tolerance Policy (which Plaintiffs call the "Family Separation Policy"). *See* ECF #21, pp. 19, 20, 21, 22, 23, 24. This argument is incorrect for multiple reasons: the Zero Tolerance Policy was not in effect when Plaintiffs were separated in January 2018, and even if it had been, it did not mandate J.P.'s prosecution for smuggling.[3]

Plaintiffs rely on an April 2017 memorandum by then-Attorney General Sessions, which asked federal prosecutors to "increase [their] efforts in this area making" § 1324 and § 1325 "higher priorities" for prosecution. ECF #21, p. 18. But that memorandum—which is cited and linked in the complaint (ECF #1 ¶ 19)—did not mandate prosecution of anyone. Rather, it set enforcement priorities while maintaining prosecutors' discretion. For a directive to preclude application of the discretionary function exception, the Supreme Court's *Gaubert* decision requires that the directive "specifically prescribe a course of action for an employee to follow." *United States v. Gaubert*, 499 U.S. 315, 322 (1991). A general commitment to pursue certain priorities does not suffice. *See, e.g.*, *Green v. United States*, 630 F.3d 1245, 1250 (9th Cir. 2011)

---

[3] Defendant also does not concede that the Zero Tolerance Policy, when in effect, was a mandatory policy that prevents application of the discretionary function exception.

(Forest Service manual that stated "a commitment to firefighter and public safety as a first priority" "d[id] not prescribe a mandatory course of action"). The decisions to prosecute J.P. and detain her separately from M.A. for criminal and immigration proceedings were discretionary acts susceptible to policy considerations. Accordingly, these actions are covered by the discretionary function exception.

At any rate, contrary to Plaintiffs' contention, the Zero Tolerance Policy was not in effect when they were apprehended at the border in January 2018. ECF #21, pp. 1, 3. The materials that Plaintiffs cite in their own filings refute that allegation. In particular, DOJ OIG Report 21-028, which is cited in the complaint (ECF #1, ¶¶ 18, 27), provides a detailed history of the Zero Tolerance Policy and makes clear the Policy did not take effect until months after Plaintiffs were detained and separated. *See* ECF #13, p. 6.

Likewise, the Southern District of New York, in another case involving family separation, recently considered the precise question of when the Zero Tolerance Policy began. *D.J.C.V. v. United States*, --- F.Supp.3d ----, 2023 WL 5334367, 2023 U.S. Dist. LEXIS 146864 (S.D.N.Y. 2023). That court found, after jurisdictional discovery, that "the Zero Tolerance policy first went into effect May 5, 2018." *Id.*, p. 42, fn. 11. This was four months after Plaintiffs J.P. and M.A. were detained and separated.

Moreover, contrary to Plaintiffs' argument, their status as class members in *Ms. L.* does not establish that they were subject to the Zero Tolerance Policy or that it was in effect in January 2018. ECF #21, p. 5. The class in *Ms. L.* includes "all adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody, absent a

determination that the parent is unfit or presents a danger to the child." *Ms. L. v. United States Immigration & Customs Enf't*, 330 F.R.D. 284, 287 (Mar. 8, 2019).  The class definition does not differentiate between individuals who were prosecuted solely for unlawful entry into the country, pursuant to the Zero Tolerance Policy, and those who—like J.P.—were detained and separated from their children prior to that policy taking effect and for other reasons, such as prosecution for other crimes.  ECF #13, p. 6-7.[4]

Finally, Plaintiffs rely on the termination of Immigration and Customs Enforcement's ("ICE") "Family Case Management Program" in June 2017 in support of their claim that the separate Zero Tolerance Policy was in effect when they were separated.  ECF #21, p. 13.  But the end of the Family Case Management Program did not entail the advent of the Zero Tolerance Policy—and the complaint does not allege otherwise.  The Family Case Management Program allowed ICE Enforcement and Removal Operations to monitor individuals released from detention into the interior of the country while awaiting final rulings from immigration proceedings.  DHS OIG Report 20-06, p. 1.[5]  The Zero Tolerance Policy did not take effect simply because the Family Case Management Program was terminated.  At any rate, the Family Case Management Program was never applicable to individuals like Plaintiff J.P., who was

---

[4] Plaintiffs also rely on a Department of Health and Human Services Office of Inspector General report cited by the *Ms. L.* Court, which observed there were separations of families "as early as June 2017."  ECF #21, p. 7; *Ms. L.,* 330 F.R.D. at 287.  Plaintiffs ignore that the HHS OIG report, as quoted in *Ms. L.*, specifies that these separations took place in a particular region "*[f]rom July through November 2017."  Id.* at 288 (quoting HHS OIG Report).  Plaintiffs do not allege that they were separated between July and November 2017.

[5] *See* https://www.oig.dhs.gov/reports/2020/dhs-lacked-technology-needed-successfully-account-separated-migrant-families/oig-20-06-nov19. (Last visited September 19, 2023.)

arrested and detained for a criminal offense rather than just awaiting resolution of her immigration proceedings.[6]

Accordingly, Plaintiffs' claims challenge discretionary actions grounded in policy considerations and are therefore barred by the discretionary function exception.

### b. The exception for actions taken while reasonably executing the law applies to the decision to transfer M.A. to ORR custody.

Plaintiffs ask the Court to adopt the Fourth Circuit's two-part test, described in *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2004), for determining whether the FTCA's exception for actions taken while reasonably executing the law applies. ECF #21, p. 25. Even if the Court were to adopt the *Welch* test, the exception would still apply here. As discussed in Defendant's opening brief, once the decision was made to criminally prosecute and detain J.P., officers made the discretionary determination that she was unavailable to care or provide physical custody for M.A., rendering M.A. an unaccompanied noncitizen child. ECF #13, p. 20. As a result, the Trafficking Victims Protection Reauthorization Act ("TVPRA") required that M.A. be transferred to the care of the Office of Refugee Resettlement ("ORR"). *See* 8 U.S.C. § 1232(b)(3). After M.A. was transferred to ORR custody, moreover, other detailed statutory and regulatory provisions became applicable to him, including 8 U.S.C. § 1232(c)(3)(A), which prohibits placement of an unaccompanied child with a person unless the Secretary of Health and Human Services first determines that the proposed custodian is capable of providing for the child's physical and mental well-being.

---

[6] Plaintiffs also claim in a footnote that the alleged failure to facilitate communications between them violated "binding standards." ECF #21, p, 25, fn 12. However, Defendants explained in their Motion that conditions of confinement, including detainees' access to telephone use, are subject to the discretionary function exception. *See* ECF #13, p. 23.

Defendant followed a statutory mandate to transfer M.A. to ORR custody once it identified him as a UAC. Even under the *Welch* test, the exception for actions taken while reasonably executing the law applies to the decision to transfer custody of M.A. to ORR.

    c.   **There is no private person analogue for Plaintiffs' claims.**

Plaintiffs insist that the torts they allege could have been committed by a private person. ECF #21, p. 29. But that is not the question before the Court; the question is whether a private person could be liable for the type of conduct alleged in the complaint. *See, e.g.*, *Westbay Steel*, 970 F.2d at 648 650 (9th Cir. 1992) (allegation of negligence was not enough to state a claim because the alleged *action* – a federal contracting officer's failure to comply with the Miller Act – had "no counterpart in private activity"); *Sea Air Shuttle Corp.*, 112 F.3d 532, 537 (1st Cir. 1997) (affirming dismissal where plaintiff alleged negligence but the alleged *conduct* was a type "that private persons could not engage in, and hence could not be liable for under local law" (quotations omitted)); *see also Ryan v. ICE*, 974 F.3d 9, 26 (1st Cir. 2020) ("controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign"); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("because no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed"); *Mazur v. United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill. 1997) (in matters relating to naturalization, "only the United States has the power to act," and, therefore, "there is no private analogue under state law").

Plaintiffs' claims are based on the referral of J.P. for criminal prosecution, her detention for criminal and immigration proceedings separate from M.A., and the transfer of M.A. to the custody of ORR. Only the government has the power to prosecute individuals and detain them

for law enforcement and immigration purposes. There is no private person analogue for Plaintiffs' claims.

    **III.    Plaintiffs Cannot Maintain Their Claims for Malicious Prosecution and False Imprisonment under Texas Law**

Plaintiffs' claim for malicious prosecution fails because they have not shown that J.P.'s indictment was unsupported by probable cause. Under Texas law, an action for malicious prosecution cannot be maintained without showing a want of probable cause. *Ada Oil Company v. Dillaberry*, 440 S.W.2d 902, 910 (Tex. Civ. App. – Houston (14th Dist.) 1969, dis.). Even if "the plaintiff is innocent of the criminal offense involved, there can be no recovery if defendants had probable cause for instituting the prosecution." *Id.* A "prosecutor's abandonment of the prosecution does not show or raise a presumption of the want of probable cause." *Id.*

Here, Plaintiffs allege that a Deportation Officer told J.P. the criminal charges were a "mistake." ECF #1, ¶¶ 71, 161. But whether or not the prosecution was ultimately pursued, as discussed in Defendant's Motion, the indictment in this case specifically found probable cause. ECF #13 pp. 6-7, 36. The complaint does not allege that the facts in the Criminal Complaint supporting J.P.'s indictment were false or that those facts, if true, were insufficient to establish probable cause. ECF # 9, 10.[7] Nor do Plaintiffs dispute that the grand jury did, in fact, find probable cause to charge her.

In support of their malicious prosecution claim, Plaintiffs rely on two cases decided under Indiana law, *Reynolds v. United States*, 549 F.3d 1108 (7th Cir. 2008), and *Alexander v. United States*, 721 F.3d 418 (7th Cir. 2013). But as explained in Defendant's Motion, Texas law—not Indiana law—applies here, and Plaintiffs cannot show an absence of probable cause under Texas

---

[7] *See also Richey v. Brookshire Grocery Co.* 952 S.W. 2d 515, 519, 40 Sup. Ct. J. 839, 842 (Tex. 1997) ("knowingly providing false information to the prosecutor [is] relevant to the malice and causation elements of a malicious prosecution claim but ha[s] no bearing on probable cause").

law. *See* ECF #13, p. 35.[8]  Texas law presumes that the defendant acted reasonably and had probable cause to initiate judicial proceedings. *Id.*  The presumption disappears only when the plaintiff produces evidence that the motives, grounds, beliefs, and other evidence on which the defendant acted did not constitute probable cause. *See id.*; Texas Torts and Remedies § 55.05 (Absence of Probable Cause).  Plaintiffs allege no such facts.

Finally, even if J.P.'s claim of malicious prosecution was meritorious, which it is not, under Texas law she cannot simultaneously maintain claims for both malicious prosecution and false imprisonment.  "If a plaintiff's arrest and detention were caused by the defendant's filing of criminal charges against the plaintiff, the plaintiff's only remedy is an action for malicious prosecution, which is more difficult to maintain and affords much less protection to the plaintiff's interests than a claim for false imprisonment."  4 Texas Torts and Remedies § 55.01 (citing *Armendez v. Bill Sears Supermarket No. 1*, 562 S.W.2d 529, 531 (Tex. Civ. App. – El Paso 1978, writ ref'd n.r.e.)).  There is no dispute that J.P. was detained pursuant to CBP's enforcement authority, and was initially subject to criminal charges.  Accordingly, her claim for false imprisonment must be dismissed.

## CONCLUSION

Plaintiffs have failed to establish subject matter jurisdiction or to state a claim upon which relief may be granted and therefore this case should be dismissed with prejudice.

Respectfully submitted,

GREGORY K. HARRIS
UNITED STATES ATTORNEY

---

[8] Plaintiffs' reliance on these cases is inapposite in any event.  In *Alexander*, the court found that "the probable-cause affidavit that served as the basis for Alexander's arrest and prosecution was based on fabricated evidence and excluded evidence that favored Alexander."  721 F.3d at 423.  In *Reynolds*, the plaintiff alleged that federal officers "submitted a knowingly false affidavit" about her to a local prosecutor and court.  549 F.3d at 1113.  The complaint here makes no such allegations about J.P.'s prosecution.

10

|     |     |
| --- | --- |
| By: | By:/s/ Kathy L. Swett |
|     | Kathy L. Swett |
|     | IL Atty # 6316491 |
|     | CA Atty # 278531 |
|     | Assistant United States Attorney |
|     | 1830 Second Avenue, Ste. 250 |
|     | Rock Island, Illinois 61201 |
|     | Telephone: 309-283-3316 |
|     | Email: kathy.swett@usdoj.gov |

**CERTIFICATE OF SERVICE**

I certify that on September 22, 2023, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Central District of Illinois by using the CM/ECF system. Participants in the case who are CM/ECF users will be served by the CM/ECF system.

/s/Kathy L. Swett